UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMAR DAVON OLIVER,

        Plaintiff,                           Case No. 1:21-cv-900

v.                                                Honorable Janet T. Neff

HEIDI WASHINGTON et al.,[1]

        Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] In the caption of his complaint, Plaintiff named "Heidie Washington" as a Defendant. However, he refers to this Defendant as "Heidi Washington" in the body of his complaint. The Court uses the correct spelling of Heidi throughout this opinion.

**Discussion**

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington, Deputy Director Jeremy Bush, Administrator Kyle Kaminski, Director of Health Care Services Marti Kay Sherry, Warden Matt Macauley, Assistant Deputy Warden James McBride, Grievance Manager Richard D. Russell, Assistant Resident Unit Managers (ARUM)/Prison Counselors (PC) Brent Fleck and Unknown Thompson, Psychologist Margaret A. Greiner, and LMSH Unknown Minnick.

Plaintiff is currently serving concurrent terms of "12 to 30 years for unlawful imprisonment and 12 to 20 years for assault by strangulation." *People v. Oliver*, No. 339826, 2018 WL 2324104, at *1 (Mich. Ct. App. May 22, 2018). Plaintiff "was charged, in addition to the offenses of which he was convicted, with four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1); however, the jury acquitted him of these charges." *Id.* The Michigan Court of Appeals set forth the following factual basis for Plaintiff's convictions:

> Ashley Austin testified that she and [Plaintiff] began dating in August 2015. Sometime before September 4, 2016, Austin falsely told [Plaintiff] that she was moving to Georgia. On September 4, 2016, Austin went to [Plaintiff's] mother's home to say a final goodbye to [Plaintiff] because she wanted to discontinue contact with him. Austin and [Plaintiff] watched television, had dinner, and had consensual sexual intercourse. Austin testified that the next morning, [Plaintiff] became angry and held her against her will, sexually assaulted her several times, and thwarted her attempts to escape by hitting, kicking, and choking her and saying, "b*tch, you're not going anywhere[.]"

*Id.* (footnote omitted). On appeal, Plaintiff asserted that the evidence presented at trial was not sufficient to sustain his unlawful imprisonment conviction because, *inter alia*, his "acquittal of CSC-I means that he did not restrain Austin for the purpose of facilitating the commission of

another felony." *Id.* at *3.  The Michigan Court of Appeals rejected that argument, noting that "a conviction of the 'other' felony [wa]s not a condition precedent" and that "[w]hile there was an eventual acquittal regarding CSC-I, the fact remains that there was *sufficient evidence presented* that [Plaintiff] restrained Austin to *facilitate* committing CSC-I." *Id.* (emphasis in original).

In his complaint, Plaintiff avers that he was "classified and labeled as a sex offender, without being afforded notice and an opportunity to be heard despite never having been either convicted of a sex crime or accused of any sexual wrongdoing during his incarceration." (ECF No. 1, PageID.3.)  He alleges that this classification has caused him "to be housed in a sex offender unit and subjected to content restrictions, in regards to his Jpay messages, photos[,] and magazines." (*Id.*)  Plaintiff asserts that he spoke with Defendants Fleck and Thompson "on several occasions about his classification with no success." (*Id.*, PageID.5.)  In May 2021, he "sent direct and actual notice by certified mail to each defendant in this case." (*Id.*)  Plaintiff indicates that such notice stated:

> I have never been convicted of a sex offen[s]e and have never had an opportunity to formally challenge the imposition of the 'sex offender' label in a[n] adversarial setting.  And that as an inmate who has never been convicted of a sex offen[s]e, I'm entitled to the procedural protections outlined by the Supreme Court in [*Wolff v. McDonnell*, 418 U.S. 539 (1974)].

(*Id.*)  Plaintiff also gave all Defendants "notice that the classification and labeling of him as a sex offender and the mandatory successful completion of the [Michigan Sex Offender Program (MSOP)] as a precondition for parole eligibility implicate[s] a protected liberty interest." (*Id.*)  He avers that each Defendant "[refused] to respond and address the issue." (*Id.*, PageID.6.)

Plaintiff suggests that his classification as a sex offender "without being afforded notice and an opportunity to be heard," violates his Fourteenth Amendment procedural due process rights. (*Id.*, PageID.3.)  Plaintiff asserts that MSOP is "voluntary, and the inmate can quit at any time.  However, . . . the state's regulations render the inmate completely ineligible for parole if the

3

treatment program is not satisfactorily completed." (*Id.*, PageID.3–4.) Plaintiff acknowledges that he has no constitutional right to be released on parole but argues that "each inmate who is identified as a sex offender must undergo a treatment program in order to become 'eligible' for parole." (*Id.*, PageID.4.)

Plaintiff argues further that the sex offender classification impairs his Fourteenth Amendment equal protection rights because he is subject to restrictions regarding what pictures and magazines he can receive through Jpay. (*Id.*) Plaintiff avers that this treatment has no rational basis because he does not have a sexual conviction. (*Id.*)

Finally, Plaintiff suggests that Defendants violated his Fifth Amendment rights against self-incrimination and double jeopardy. (*Id.*, PageID.1, 4.) Plaintiff avers that inmates classified as sex offenders who must participate in MSOP are "forced to admit past behavior in sex offen[s]e classes, . . . and that staff [are] required to report any criminal activity past or present." (*Id.*, PageID.4–5.) Plaintiff states that he is "activ[ely] appealing his conviction and such a mandate to participate in a MSOP class would further infringe on the [F]ifth [A]mendment right against self-incrimination."[2] (*Id.*, PageID.5.)

Plaintiff seeks injunctive relief as well as punitive and nominal damages. (*Id.*, PageID.5–6.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

---

[2] The Court notes that Plaintiff's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is currently pending before this Court. *See Oliver v. Macauly*, No. 1:21-cv-406 (W.D. Mich.).

more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **Respondeat Superior and Responses to Grievances and Complaints**

As noted above, Plaintiff names several supervisory officials, as well as staff members at IBC, as Defendants in this matter. In his complaint, Plaintiff vaguely asserts that he

"spoke with [Defendants Fleck and Thompson] on several occasions about his classification with no success." (ECF No. 1, PageID.5.) Although Plaintiff alleges that he spoke with Defendants Fleck and Thompson regarding his classification, Plaintiff does not allege that they held positions in which they would have been able to change Plaintiff's classification. He also avers that he sent certified mail concerning his concerns about being classified as a sex offender to each Defendant, and that they failed to respond. (*Id.*, PageID.5–6.)

Plaintiff fails to make specific factual allegations against all Defendants, other than his claim that they failed to adequately respond to his concerns about his classification. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific

6

> incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

In this case, Plaintiff fails to allege any facts showing that the supervisory Defendants, including Defendants Washington, Kaminski, Bush, Sherry, Macauley, and McBride, encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Indeed, Plaintiff merely indicates that all Defendants failed to adequately respond to his concerns about his classification as a sex offender, which is insufficient to impose liability against Defendants. *See Shehee*, 199 F.3d at 300. Plaintiff fails to allege facts suggesting that any of the named Defendants were personally involved in his classification and placement in MSOP. Because Plaintiff's § 1983 action, as pled, is premised on nothing more than respondeat superior and a failure to respond to complaints, his action fails to state a claim. While that alone mandates dismissal of Plaintiff's complaint, the Court considers his individual claims below.

    **B.**    **Fourteenth Amendment Claims**

        **1.**    **Due Process**

            **a.**    **Right to Parole**

To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without

the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006). To the extent that Plaintiff raises a procedural due process claim based on a right to parole, he fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Thus, any failure or refusal by the Michigan Parole Board to consider Plaintiff for, or grant him, parole does not implicate a federal right.[3] In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

### b. Right to Not Be Classified as a Sex Offender

Plaintiff also contends that his procedural due process rights were violated because he was classified as a sex offender without "being afforded notice and an opportunity to be heard." (ECF No. 1, PageID.3.) Where parole is not a protected liberty interest, a condition or voluntary prerequisite of parole cannot enjoy due process protection either, unless that condition or prerequisite is independently worthy of due process protection. *See Catanzaro v. Harry*, 848 F. Supp. 2d 780, 793–94 (W.D. Mich. 2012) ("Thus, the conditions of Plaintiff's parole[, including participation in a sex-offender treatment program,] implicated Plaintiff's right to due process only if they: (1) exceeded the sentence imposed on Plaintiff 'in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,' *Sandin*, 515 U.S. at 484 . . . (citing *Vitek v. Jones*, 445 U.S. 480 . . . (1980)); or (2) imposed 'significant and atypical hardship in relation to the ordinary incidents of prison life.' *Id.*").

In *Catanzaro*, this Court concluded that a prisoner convicted of a sex offense was not deprived of due process where he was compelled to participate in sex-offender treatment as a condition of parole. The prisoner, Catanzaro, compared his plight to that of the plaintiff in *Vitek*:

---

[3] The Court notes that Plaintiff is not eligible for parole consideration until September 4, 2028. *See* Michigan Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=979276 (last visited Feb. 7, 2022). Thus, even if Plaintiff had a liberty interest in his parole, his classification to MSOP would not have a present impact on his parole eligibility.

9

> In *Vitek*, prison officials determined that the plaintiff, a state prisoner, was suffering from a mental illness or defect that could not be treated at the prison facility, so they transferred him to a mental health hospital for treatment under a state statute allowing the transfer of such prisoners. *Vitek*, 445 U.S. at 484. The plaintiff claimed that the prison officials violated his right to due process because their determination of illness was not accompanied by adequate notice or a hearing. *Id.* at 485. The Court agreed, finding that state law and practice gave the plaintiff an objective expectation that he would not be transferred unless a proper determination was made regarding his mental state. *Id.* at 489–90. Even apart from state law and practice, however, the plaintiff was entitled to due-process because the consequences that he suffered were "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Id.* at 493. The Court noted that "involuntary confinement to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." *Id.* Confinement to a "mental hospital" for treatment involves more than merely a loss of freedom; it also has a stigmatizing effect on the treated individual. *Id.* at 492. The Court concluded that, while "the restrictions on the prisoner's freedom of action at the [hospital] by themselves might not constitute the deprivation of a liberty interest . . . the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id.* at 494.

*Catanzaro*, 848 F. Supp. 2d at 794 (parallel citations omitted). This Court determined that "requiring a convicted sex offender to undergo rehabilitative treatment related to that offense is wholly different than requiring a prisoner to undergo involuntary health treatment." *Id*. at 795. This Court recognized a distinction between imposing sex-offender classifications and requiring sex-offender treatment of those convicted of sex offenses and imposing that classification and requiring such treatment of those who were not. *Id*. at 796. The Sixth Circuit Court of Appeals recently acknowledged the existence of that line as well, but that court drew the line at a slightly different place. In *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518 (6th Cir. Apr. 28, 2020), the Sixth Circuit reversed the district court's dismissal of a claim like Plaintiff's where the plaintiff had "neither been convicted of a sex crime nor accused of any sexual wrongdoing while incarcerated." *Harper*, 2020 WL 4877518, at *1.

10

This Court recently applied *Catanzaro* to dismiss another prisoner's claim that his procedural due process rights were violated when he was classified as a sex offender. *See Bridges v. Mich. Parole Bd. Members*, No. 1:20-cv-1138, 2020 WL 7021563 (W.D. Mich. Nov. 30, 2020). While on parole, the prisoner, Bridges, was charged with resisting and obstructing a police officer and with fourth-degree criminal sexual conduct (CSC-IV). *Id.* at *2. Bridges pled to "attempted resisting and obstructing a police officer. The CSC-IV charge was dismissed by the trial court." *Id.* On August 30, 2020, the Michigan Parole Board denied Bridges parole and required him to complete the MSOP. *Id.* Bridges filed a § 1983 suit alleging that "he was denied due process because the parole board [wa]s requiring him to complete the MSOP even though the CSC-IV charge was dismissed." *Id.*

This Court noted that Bridges' criminal history included sex offenses, indicating that in 2004, he pled *nolo contendere* to a charge of assault with intent to commit a felony in exchange for dismissal of home invasion and second-degree criminal sexual conduct (CSC-II) charges. *Id.* "Although the charge of CSC-II was dismissed, the factual basis for that charge remained relevant because it was the 'felony' Plaintiff intended to commit when he assaulted the victim." *Id.* The Court concluded that Bridges' position was more like the plaintiff in *Catanzaro* rather than *Harper* because Bridges "ha[d] committed a sexual offense: assault with the intent to commit a felony—CSC-II." *Id.* at *5. The Court found that Bridges alleged "nothing to support the inference that he did not receive the process he was due" because he "enjoyed all of the necessary procedural protections when he entered his plea." *Id.* Bridges filed multiple motions for reconsideration, and this Court acknowledged that it had overlooked the fact that Bridges' conviction had later been amended to third-degree home invasion. *See* Order, *Bridges v. Mich. Parole Bd. Members*, No. 1:20-cv-1138 (W.D. Mich. Feb. 5, 2021) (ECF No. 15). The Court,

11

however, concluded that Bridges had still pled guilty to a sexual offense because the crime underlying the home invasion charge was still the sexual assault. *Id.*

The Sixth Circuit affirmed this Court's dismissal, stating:

> We have suggested—though not held—that a prisoner may have a liberty interest in not being labelled a sex offender and therefore is entitled to adequate process due to the stigma attached to such a classification. *See Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518, at *3 (6th Cir. Apr. 28, 2020) (order); *see also Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010); *Kirby v. Siegelman*, 195 F.3d 1285, 1291–92 (11th Cir. 1999) (per curiam); *Neal v. Shimoda*, 131 F.3d 818, 829–30 (9th Cir. 1997).
>
> Therefore, assuming, without deciding that a liberty interest is at stake, we conclude that Bridges nonetheless did not adequately plead a due process violation because he has previously been convicted of a sex offense—third-degree home invasion. Third-degree home invasion entails:
>
>> Break[ing] and enter[ing] a dwelling with intent to commit a misdemeanor in the dwelling, enter[ing] a dwelling without permission with intent to commit a misdemeanor in the dwelling, or break[ing] and enter[ing] a dwelling or **enter[ing] a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commit[ing] a misdemeanor.**
>
> Mich. Comp. Laws § 750.110a(4)(a) (emphasis added). The underlying conduct is therefore an element of the offense that comprised the sexual assault upon the unconscious victim in which Bridges placed his hand down her pants and kissed her face. This factual basis was not contested by Bridges during his 2004 plea. Requiring an offender convicted of a sex offense to participate in sex-offender treatment as a prerequisite for parole does not require additional due process protections beyond the prior conviction. *See Meza v. Livingston*, 607 F.3d 392, 401 (5th Cir. 2010); *Jennings v. Owens*, 602 F.3d 652, 659 (5th Cir. 2010); *Neal*, 131 F.3d at 831.

Order, *Bridges v. Mich. Parole Bd. Members*, No. 20-2224 (6th Cir. June 22, 2021) (ECF No. 18).

Here, Plaintiff is not in the same position as the plaintiff in *Harper*; his position is more like the plaintiffs in *Catanzaro* and *Bridges*. Despite Plaintiff's argument to the contrary, he has committed a sexual offense: unlawful imprisonment for the purpose of facilitating another felony—CSC-I. While Plaintiff was acquitted of the CSC-I charges, the fact remains that the conduct which formed the basis of the CSC-I charges served as the underlying conduct and,

12

therefore, an element of the offense of unlawful imprisonment. Plaintiff, therefore, enjoyed all the necessary procedural protections during his criminal proceedings. Thus, to the extent Plaintiff is entitled to due process protection before being classified as a sex offender and placed into the MSOP, he alleges nothing to support the inference that he did not receive the process he was due. The MSOP is designed to offer treatment to "offenders with current sex offense convictions and histories of sexual offending." https://www.michigan.gov/corrections/0,4551,7-119-68854 _68856_74016---,00.html (last visited Feb. 7, 2022). Even if Plaintiff is not presently serving a sentence for a current sex offense conviction, he has a history of sexual offending. The requirement that he participate in the MSOP suggests nothing more. Plaintiff's Fourteenth Amendment procedural due process claims will, therefore, be dismissed.

### 2. Equal Protection

Plaintiff next asserts that his classification as a sex offender violates his Fourteenth Amendment equal protection rights because "prison officials restricted Jpay pictures and magazines[] based on his classification and label of a sex offender." (ECF No. 1, PageID.4.) Plaintiff avers that officials treat sex offenders "disparately as compared to 'non sex offenders.'" (*Id.*) Plaintiff argues that "this targeted treatment has no rational basis" because he "doesn't have a sexual conviction." (*Id.*)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The Sixth Circuit has described a universe of three types of equal protection claims:

> "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the

13

> difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty. Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). [Plaintiff] does not argue an infringement of a fundamental right or that he is a member of a suspect class. Rather, [Plaintiff] relies on the third argument—whether others "similarly situated" received different treatment "without any rational basis for the difference." *Id*. This is called a "class-of-one" theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam).

*Davis v. Detroit Pub. Schs. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2020). "[T]he hallmark of [a class-of-one] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (internal quotes omitted).

Plaintiff does not contend that the denial of Jpay pictures and magazines is a fundamental right. He does not claim that the limits target a suspect class.[4] Instead he contends that he was denied Jpay pictures and magazines without a reason. Plaintiff is alleging a "class of one" equal protection claim.

To prove a class-of-one equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a

---

[4] "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003), for example, prisoners holding the same security classification, *id*., or prisoners who are labeled sex offenders.

federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

Because the crux of an equal protection violation is the treatment of similarly situated people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'" *Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)).  In other words, "the comparative [person] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the[ decision-maker's] treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff does not suggest that the MDOC cannot legitimately withhold the Jpay pictures and magazines from inmates who have a sexual conviction.  Rather he claims the MDOC should not and does not withhold the Jpay pictures and magazines from inmates who do not have a sexual conviction.  (ECF No. 1, PageID.4.)  He claims that he is in that category, (*id.*), yet he is denied the Jpay pictures and magazines.

Plaintiff is picking the wrong comparator.  He claims he does not have a "sexual conviction" but, for the reasons set forth above, he is simply wrong.  Plaintiff was convicted of restraining the victim to *facilitate* committing CSC-I.  Plaintiff does have a sexual conviction.  He is being treated exactly the same way as the others to whom he is similarly situated.  Accordingly, Plaintiff has failed to allege an equal protection violation.

15

C. **Fifth Amendment Claims**

1. **Double Jeopardy**

Plaintiff suggests that his placement in the MSOP violates the Fifth Amendment's Double Jeopardy Clause. (ECF No. 1, PageID.1.) The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Although the language "jeopardy of life or limb" suggests the protection only applies to the most serious infractions, "the Clause has long been construed to mean something far broader than its literal language." *Breed v. Jones*, 421 U.S. 519, 527–28 (1975) (citing *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 170-73 (1874)). The clause provides three separate guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *See United States v. Dixon*, 509 U.S. 688, 696 (1993); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

However, the Double Jeopardy Clause does not apply to all punishments. "[J]eopardy describes the risk that is traditionally associated with a criminal prosecution." *Breed*, 421 U.S. at 528 (citing *Price v. Georgia*, 398 U.S. 323, 326, 329 (1970)). For that reason, the Supreme Court has determined that the Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense and then only when such occurs in successive proceedings." *United States v. Beaty*, 147 F.3d 522, 524 (1998) (quoting *Hudson v. United States*, 522 U.S. 93, 99 (1997)).

Plaintiff's placement in the MSOP does not violate the Double Jeopardy Clause because the clause "was not intended to inhibit prison discipline." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008); *see also Harper*, 2020 WL 4877518, at *3. Moreover, while not explicitly stated in his complaint, Plaintiff may not wish to admit to past behavior that formed the

16

basis of the CSC-I charges previously brought against him. Plaintiff, however, cannot again be subject to prosecution on such charges because he was previously acquitted of them at trial. *See Dixon*, 509 U.S. at 696; *Vitale*, 447 U.S at 415; *Pearce*, 395 U.S. at 717. Plaintiff, therefore, cannot maintain a cognizable Fifth Amendment double jeopardy claim based upon his classification as a sex offender and placement in MSOP.

### 2. Self-Incrimination

Plaintiff also alleges that classification as a sex offender violates his Fifth Amendment right against self-incrimination because he "will be forced to admit past behavior in sex offen[s]e classes" as part of the MSOP program. (ECF No. 1, PageID.4.) He asserts that he is "[actively] appealing his conviction and such a mandate to participate in a MSOP class would further infringe on the [F]ifth [A]mendment right against self-incrimination." (*Id.*, PageID.5.)

The Fifth Amendment Self–Incrimination Clause, which applies to the States via the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1 (1964), provides that no person "shall be compelled in any criminal case to be a witness against himself." *McKune v. Lile*, 536 U.S. 24, 35–36 (2002). Because "[t]he 'Amendment speaks of compulsion,' . . . the Court has insisted that the 'constitutional guarantee is only that the witness not be compelled to give self-incriminating testimony.'" *Id.* (quoting *United States v. Monia*, 317 U.S. 424, 427 (1943), and *United States v. Washington*, 431 U.S. 181, 188 (1977)). "The privilege against self-incrimination does not terminate at the jailhouse door, but the fact of a valid conviction and the ensuing restrictions on liberty are essential to the Fifth Amendment analysis." *Id.* at 36 (Kennedy, J., plurality) (citing *Sandin v. Conner,* 515 U.S. 472, 485 (1995)).

*McKune* involved a convicted sex offender's challenge to Kansas's compulsory sex offender program requiring him to admit to his crime of conviction, as well as to any other past sexual offenses. *Id.* at 29. The Court plurality concluded that "[a] prison clinical rehabilitation

17

program . . . does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life." *Id.* at 37–38. The Court rejected the plaintiff's Fifth Amendment claim, noting that a decision to not participate would neither extend his term of incarceration nor render him ineligible to receive good-time credits or parole, but would result merely in his transfer "to a less desirable maximum-security unit." *Id.* at 38. The opinion certainly suggests, although it does not hold, that denying a person parole might be the sort of consequence that so heavily burdens the privilege against self-incrimination that it cannot be permitted.[5]

Plaintiff here alleges that he will be ineligible for parole if he refuses to participate in MSOP (ECF No. 1, PageID.5), and the Court must accept that allegation as true at this stage. Recently, the Sixth Circuit concluded that "such an adverse consequence is precisely the kind that the *McKune* plurality thought would implicate the Fifth Amendment's protections against self-incrimination." *Harper*, 2020 WL 4877518, at *4. The *Harper* court concluded that Harper's "complaint therefore contain[ed] sufficient factual matter to support a plausible claim that his Fifth Amendment right against self-incrimination would be violated because he would lose his parole eligibility by refusing to participate in" MSOP. *Id.*

The defect in Plaintiff's allegations, however, is that he has failed to allege facts that support an inference that one or more of these Defendants are compelling him to admit his offense behavior and thereby incriminate himself. Nor has Plaintiff alleged facts to support the inference that one or more of these Defendants are denying parole eligibility, the consequence that

---

[5] The self-incrimination risk is not directly with regard to the offense for which Plaintiff was convicted or the offenses of which he has been acquitted. Rather, the relevant risk is that an admission of culpability for the offense would create a risk of a perjury prosecution. *McKune*, 536 U.S. at 31–32. Plaintiff, like Lile, testified at his trial. An admission of the offense conduct, therefore, might establish that Petitioner's trial testimony was perjurious.

18

too heavily burdens the right against self-incrimination. Therefore, Plaintiff has failed to allege a violation of his Fifth Amendment self-incrimination privilege by these Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   February 10, 2022                  /s/ Janet T. Neff
                                                        Janet T. Neff
                                                        United States District Judge